THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| LANCE CONWAY WOOD,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>SHARON D'AMICO,<br><br>　　　　　　　Respondent. | **MEMORANDUM DECISION<br>& DISMISSAL ORDER**<br><br>Case No. 4:24-CV-84-AMA<br><br>District Judge Ann Marie McIff Allen |

　　　　Petitioner Lance Conway Wood ("Petitioner"), filed a *pro se* Petition (ECF No. 1) for relief under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C.S. § 2241, *et seq.* (2026) ("AEDPA"). This action is Petitioner's third attempt to challenge the validity of his conviction under Section 2254 of the AEDPA. Respondent moves to dismiss, arguing that this court lacks jurisdiction to review Petitioner's claims because Petitioner has failed to comply with requirements for a second or successive petition under Section 2254. *See* 28 U.S.C.S 2244 (3)(A)(2026) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.")

　　　　Petitioner has not obtained authorization from the Court of Appeals to file a second or successive petition under Section 2254. This court lacks jurisdiction to consider Petitioner's claims. Respondent's motion to dismiss is GRANTED.

## I. BACKGROUND

On November 21, 1988, Petitioner and Michael Archuleta kidnapped, raped and murdered Gordon Church ("Victim") near Cedar City, Utah. *State v. Wood*, 868 P.2d 70, 74 (Utah 1993). The next day, Petitioner reported the murder to his parole officer and other law enforcement agents. *Id*. at 80. Although Petitioner was initially treated as a witness, four days after the attack Petitioner was charged with murder and held without bail. *Id*. at 81.

In 1990, a jury convicted Petitioner for first-degree murder, aggravated sexual assault, and aggravated kidnapping for his role in the crime. *Id.* at 74. Petitioner was sentenced to life in prison for the murder and two consecutive sentences of ten-years-to life for the kidnapping and sexual assault. *Id*. The Utah Supreme Court affirmed Petitioner's murder and kidnapping convictions but vacated the sexual assault conviction because it merged with the first-degree murder. *Id*. at 91.

Petitioner filed his first petition for relief under Section 2254 ("First Petition") in February of 1997. *Wood v. Utah*, No. 2:97-cv-94 DS (D. Utah, Feb. 6, 1997) (ECF No. 10-1). The First Petition alleged that 1) the trial court failed to excuse two jurors for cause; 2) the trial court failed to exclude statements Petitioner made to police after he requested counsel; 3) the evidence at trial failed to establish necessary elements of the convictions; and 4) Petitioner's conviction for aggravated kidnapping should have merged with his conviction for first-degree murder. This court rejected each of the claims in the First Petition. *Wood v. Utah*, No. 2:97-cv-94 DS, No. 33 (D. Utah, Apr. 11, 2000). On appeal, Petitioner claimed that he had received ineffective assistance from both his trial and appellate counsel. *Wood v. Utah*, No. 2:97-cv-97 DS, No. 42, F. App'x 852, 2001 U.S. App. LEXIS 4357 (10th Cir. 2001) (unpublished).

Petitioner also argued that he only feigned participation in the crimes because he was acting as an informant for law enforcement. *Id*. The Tenth Circuit determined that Petitioner had not preserved those issues for appeal by presenting them to the district court and dismissed his appeal. *Id.*

Petitioner next filed a second petition for relief under Section 2254 (the "Second Petition") asserting the issues the Tenth Circuit had dismissed in his appeal. Petition, *Wood v. Utah*, No. 2:01-cv-872 DB (ECF No. 10-2, at 3) ("The Tenth Circuit Court of Appeals in its order dismissing the appeal stated that petitioner did not present these issues to the district court. Petitioner now raises these issues in district court.") The Second Petition claimed that 1) Petitioner had received ineffective assistance of trial and appellate counsel; 2) the prosecution had obtained Petitioner's conviction by knowingly introducing false testimony and ensuring that a material witness for the defense was unavailable; and 3) Petitioner was actually innocent of the murder because he had only feigned participation in the crimes because he was scared of his accomplice, whom he was monitoring at the request of his parole officer at the time of the murder. ECF No. 10-2. This court dismissed Petitioner's claims as untimely, noting also that Petitioner had already filed another petition under AEDPA. Order, *Wood v. Utah*, No. 2:01-cv-872, No. 14 (D. Utah Oct. 20, 2003). On appeal, the Tenth Circuit concluded that the district court had lacked jurisdiction to determine that the Second Petition was untimely because Petitioner had failed to obtain authorization to file a second or successive petition. *Wood v. Utah*, No. 03-4265 (10th Cir. July 16, 2004) (ECF No. 10-3, at 1.) The Tenth Circuit vacated the district court's order, construed the Second Petition as a request for authorization to file a second or successive petition, and denied the request. *Id*.

On October 10, 2024, Petitioner filed the Petition, his third application for relief under AEDPA, without obtaining the necessary authorization from the Tenth Circuit.

## II. CLAIMS

The Petition asserts six claims:

1) Petitioner is actually innocent of the crimes for which he was convicted because at the time of the murders he was acting as an agent of law enforcement. ECF No. 1, at ¶ 53;

2) Prosecutors obtained his conviction under a theory of accomplice liability only by "concealing, destroying, and fabricating evidence, and eliciting false testimony." *Id.* at ¶ 71;

3) Petitioner received ineffective assistance of trial counsel. *Id* at ¶ 82.

4) New evidence, including statements recorded in a documentary produced in 2018, and a written statement made by his fiancée, undermines the prosecution's theory of the case:

> Sometime in 2018, in the documentary "Dog Valley", Iron County prosecuting attorney Scott Burns (hereon [sic] referred to as "Scott"), one of the first prosecuting attorney [sic] to interview [Petitioner], assisted prosecutors Warren and Calver in [Petitioner's] prosecution, and testified that [Petitioner] actively and fully participated in [Victim's] murder and kidnapping.
> In the "Dog Valley" documentary Scott took an entirely different position in his testimony, claiming now that [Petitioner] only stood-by and may not have been the person that pulled the trigger, but he didn't do anything to prevent [Victim's] murder.
> In addition, to Scott's change in testimony, a lady (name unknown at this time) who was in the same documentary "Dog Valley" even went further and stated that [Petitioner] only watched and stood by and did nothing to prevent [Archuleta] from murdering [Victim.]
> The "Dog Valley" documentary also established that [Petitioner] was acting under authority of law enforcement prior to, during, and after [Victim's] kidnapping and murder. Additional evidence shall establish [Petitioner's] innocence of being an accessory to [Victim's] kidnapping and murder.

> [Petitioner's fiancée] also wrote a statement that also supports [Petitioner's] defense that he was acting under the authority of law enforcement. [Fiancée] states that she was present when [parole officers] forced [Petitioner] to be their informant, and that "[t]hey told us to watch [codefendant] &let them know if he had any weapons on him & to call them the next day. They left us there even though they knew we were in danger & knowing [Archuleta] was a danger to us and others."

*Id*. at ¶¶ 86-90;

5) Unspecified new DNA testing and forensic analysis would demonstrate that Petitioner was actually innocent of the crimes for which he was convicted. *Id*. at ¶ 100;

6) Utah courts unfairly denied Petitioner the opportunity to establish his factual innocence as available under Utah law. *Id.* at ¶¶ 124-26.

### III. STANDARD OF REVIEW

The AEDPA provides inmates an opportunity to obtain a writ of habeas corpus when their incarceration violates federal law. 28 U.S.C.S. § 2241(c)(3) (2026). ("The Writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States.") "Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas . . . proceedings, which are used to collaterally attack the validity of a conviction and sentence." *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (internal citations omitted).

Section 2244 limits opportunities to file second or successive habeas petitions under Section 2254. "Habeas petitioners are generally entitled to 'one fair opportunity' to litigate the merits of their postconviction claims in federal court." *Rivers v. Guerrero*, 605 U.S. 443. 446 (2025). "The filing of a second or successive §2254 application is tightly constrained by the provisions of the AEDPA." *Case v. Hatch*, 731 F.3d 1015, 1026 (10th Cir. 2013.) "Section

5

2244's gate-keeping requirements are jurisdictional in nature, and must be considered prior to the merits of a § 2254 petition." *Id*. at 1027, (citing *Panetti v. Quarterman*, 551 U.S. 930, 942-47 (2007)). Under Section 2244, courts must dismiss any claim which had been presented in a previous application. 28 U.S.C.S. § 2244(b)(1); *Tyler v. Cain*, 533 U.S. 656, 661 (2001) ("If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases.")

Claims under Section 2254 which were not presented in a previous application may only be considered in narrow circumstances. The applicant must first obtain authorization to file a second and successive petition from the appropriate court of appeals. 28 U.S.C.S. § 2244(b)(3)(A). Such authorization may only be granted where the applicant demonstrates that the new claims rely on either 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court; or, 2) a factual predicate which could not have been discovered previously, which "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C.S. § 2244(b)(2)(B); *Tyler v. Cain*, 533 U.S. at 661-62 (reviewing conditions for granting authorization to file a second or successive petition).

> When a second or successive § 2254 or § 2255 claim is filed in the district court without the required authorization from [the Court of Appeals], the district court may transfer the matter to [the Court of Appeals] if it determines it is in the interest of justice to do so under § 1631, or it may dismiss the motion or petition for lack of jurisdiction.

*In re Cline*, 531 F.3d 1249, 1252 (10th Cir. 2008). "Where there is no risk that a meritorious successive claim will be lost absent a § 1631 transfer, a district court does not abuse its discretion if it concludes it is not in the interest of justice to transfer the matter to [the Court of Appeals] for authorization." *Id*.

## IV. ANALYSIS

The Petition challenges the same conviction and sentence that he challenged in his past unsuccessful petitions to this court. *See* First Petition (ECF No. 10-1*);* Second Petition (ECF No. 10-2.) Petitioner has not obtained the necessary permission to file a second or successive petition under Section 2254.

### a. This Court Lacks Jurisdiction to Consider Petitioner's Claims

The Petition's first three claims must be dismissed because they were presented in a previous petition. *See*, *Rivers v. Guerrero*, 605 U.S. 443, 450 (2025) ("§2244 prohibits habeas applicants from filing a subsequent petition that relitigates the merits of previously denied claims.") The Petition's first claim, that Petitioner is actually innocent of the crimes for which he was convicted because he only feigned participation out of fear and was only present as an agent of law enforcement, was presented as his fourth claim in the Second Petition. *See*, ECF No. 10-2, at 5. The Petition's second claim, that Prosecutors obtained his conviction by "concealing, destroying, and fabricating evidence, and eliciting false testimony" was presented as the third claim in the Second Petition. *See, id*. The Petition's third claim, that he received ineffective assistance of trial counsel, was presented as the second claim in the Second Petition. *See*, *id*. at 4. This court lacks jurisdiction to consider Petitioner's first three claims because the Petition is a

second and successive petition under Section 2254, and those claims were each presented in a previous application for habeas relief. *See* 28 U.S.C.S. §2244(b)(1).

To the extent that Petitioner's fourth claim reiterates his first claim, that he is actually innocent of the crimes to which he was convicted because he was acting as an agent of law enforcement, or his second claim, that his conviction was obtained by "concealing, destroying, and fabricating evidence, and eliciting false testimony," it must also be dismissed because those claims were included in a previous petition. *See* 28 U.S.C.S. § 2244(b)(1).

This court also lacks jurisdiction over Petitioner's remaining claims. In order to file a second or successive challenge to a conviction, an inmate must first obtain permission from the court of appeals. *See* 28 U.S.C.S. § 2244(b)(3)(A). Petitioner has not obtained authorization to file a second or successive petition. This court may dismiss Petitioner's remaining claims for lack of jurisdiction, or if the interests of justice so require, the court may transfer the claims to the Tenth Circuit for consideration as a request for authorization to file a second or successive petition under Section 2254. *See In re Cline*, 531 F.3d at 1252.

**b. Transfer to the Tenth Circuit is Not in the Interest of Justice**

This misfiled petition may be transferred to the court of appeals "if . . . it is in the interest of justice." *Id*. § 1631. In determining here that a transfer would not be in the interest of justice, the Court has examined whether the claims are likely to have merit, and whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction. *See In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). Having reviewed Petitioner's briefing, this court concludes that the interests of justice do not support transfer of the Petition to the Court of Appeals.

Petitioner's remaining claims lack merit because they are untimely. The AEDPA sets a one-year period of limitation to file a habeas-corpus petition. 28 U.S.C.S. § 2244(d)(1) (2026). The period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*. However, the AEDPA includes a grace period for convictions which became final prior to its enactment. *Preston v. Gibson,* 234 F.3d 1118, 1120 (10th Cir. 2000) ("Where a conviction became final before AEDPA took effect . . . the limitations period for a federal habeas petition starts on AEDPA's effective date, April 24, 1996). Petitioner was convicted in 1991. Petitioner filed his First Petition for federal habeas relief in February 1997. *See* ECF No. 10-1. By the time Petitioner filed his Second Petition in November 2001 the period of limitations had expired. *See* ECF No. 10-3. Petitioner filed the current Petition in October 2024, decades after his period of limitations had expired.

In "rare and exceptional circumstances" equitable tolling of the statute of limitations may excuse untimeliness. *See Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2001.) To qualify for equitable tolling, the petitioner must show that in light of new evidence not presented at trial, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). None of Petitioner's claims meet this standard.

Petitioner's fourth claim does not qualify for equitable tolling. Petitioner does not explain whether Scott Burns, Petitioner's fiancée, or the unidentified witness were unavailable at trial in 1990. Nor has Petitioner explained how the proposed new testimonial evidence could not have been obtained through reasonable diligence at the time of trial. Petitioner has not introduced into evidence the 2018 documentary, his fiancée's affidavit, or records from the trial for this court's consideration. But even if the evidence Petitioner describes were submitted as evidence, it is

insufficient to establish Petitioner's innocence. *See*, *Stafford v. Saffle*, 34 F.3d 1557, 1562 (10th Cir. 1994) ("corroborating evidence, impeaching evidence, or evidence merely raising some suspicion or doubt of [defendant's] guilt" is insufficient to establish actual innocence.) Petitioner's fourth claim lacks sufficient merit to qualify for equitable tolling because he has not shown that the new evidence would prevent a reasonable juror from finding him guilty.

Equitable tolling cannot rescue Petitioner's fifth claim. Petitioner has not identified any new forensic methodologies which were unavailable at the time of trial. Nor has Petitioner submitted new results to establish his innocence. Petitioner's conclusory claim that hypothetical new testing would exonerate him fails to establish that no reasonable fact finder could have found him guilty.

Petitioner's sixth claim is also ineligible for equitable tolling. Petitioner's sixth claim asserts that the Utah courts unfairly denied him the opportunity to establish his factual innocence as available under Utah Code Section 78B-9-401, *et seq*. Petitioner offers no support for his argument that lack of access to Utah specific legal materials excuses his untimeliness of his sixth claim. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (inmate housed in out-of-state prison failed to show that his lack of access to state legal materials excused his failure to comply with federal filing limits).

Further, Petitioner's sixth claim asserts a violation of state law, which is not a cognizable basis for federal habeas relief. The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of

state law."). Utah Courts rejected Petitioner's claim that he was entitled to prove his factual innocence under Utah law claim. Order of Affirmance, *Wood v. Utah*, Case No. 20221100-CA (Utah App. Ct. July 28, 2023) *aff'd* 537 P.3d 1015 (Utah 2023) (ECF No. 10-9). The Supreme Court has repeatedly emphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 67-68 (citing 28 U.S.C.S § 2241). Federal habeas review of Petitioner's state-law-based claim would be unwarranted because it does not raise a federal question.

The Petition was not filed in good faith. Petitioner should have known that this court lacked jurisdiction to consider his claims unless he obtained permission to file a second or successive petition because his Second Petition was rejected by the Tenth Circuit because he had failed to comply with AEDPA's strict limitations on filing a second or successive petition. ECF No. 10-3, at 1. Transfer to the Tenth Circuit is unwarranted because all of Petitioner's claims are untimely, lack merit, and were not filed in good faith.

## V. CONCLUSION

The Court lacks jurisdiction to review Petitioner's § 2254 claims in this second or successive petition; and, it is not in the interest of justice to transfer the case to the Tenth Circuit Court of Appeals.

**IT IS ORDERED** that:

**(1)** Respondent's motion to dismiss for lack of jurisdiction (ECF No. 9) is **GRANTED**.

**(2)** Petitioner's motion for explanation (ECF No. 11) is **DENIED** for mootness.

**(3)** This habeas-corpus petition (ECF No. 1) is **DENIED** without prejudice.

This action is **CLOSED**.

    **(4)** A certificate of appealability is **DENIED**.

DATED this 12th day of March 2026.

                                            BY THE COURT:

                                            JUDGE ANN MARIE MCIFF ALLEN
                                            United States District Court